IN THE
UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

No. 25-11756

NAPLES PRIDE,

Plaintiff-Appellee,

v.

CITY OF NAPLES, *et al.*,

Defendants-Appellants

On Appeal from the United States District Court
for the Middle District of Florida

**PLAINTIFF-APPELLEE'S OPPOSITION TO PROPOSED INTERVENOR DEFENDANTS-APPELLANTS' EMERGENCY MOTION FOR LEAVE TO INTERVENE AND FOR A STAY PENDING APPEAL**

Samantha J. Past (FBN 1054519)
Daniel B. Tilley (FBN 102882)
ACLU Foundation of Florida
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2714
spast@aclufl.org
dtilley@aclufl.org

Jonah M. Knobler
Thomas P. Kurland
Justin S. Zaremby
Joshua M. Goldman
Maxwell Weiss
Anthony Wong
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Plaintiff-Appellee*

## **CERTIFICATE OF INTERESTED PERSONS**
## **AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, Plaintiff-Appellee certifies that Defendants-Appellants' Certificate of Interested Persons included with their Motion (App. Doc. 5-1 at 2-4) is complete, with the exception of the following additional interested person:

1. Jadon, David, *District-Court Counsel for Defendants*

Plaintiff-Appellee certifies that there are no corporate disclosures.

Plaintiff-Appellee Naples Pride ("Plaintiff") opposes Proposed Intervenor-Defendants-Appellants' ("Movants") Emergency Motion for Leave to Intervene on Appeal and for a Stay Pending Appeal ("Motion").

## INTRODUCTION

This is a First Amendment suit between Plaintiff and the City of Naples. This Saturday, June 7, Plaintiff will put on a family-friendly drag performance as part of its annual Pridefest celebration. The underlying lawsuit concerns whether Plaintiff should be able to stage its performance outdoors, as opposed to in an small indoor venue, and whether parents who want to bring their minor children to Plaintiffs' performance should be allowed to do so.

Movants are three private citizens who live in Naples and strongly dislike drag performances. Below, they sought to intervene in Plaintiff's lawsuit to "help" Naples defend its permit restrictions. They have zero legal interest—or even any practical interest—in the outcome of the suit. After all, if they do not want their children to see Plaintiff's drag performance, they can simply not bring them (which, presumably, they intend not to do).

The District Court denied the branch of Movants' motion to intervene that sought to participate in the preliminary injunction proceedings. And rightly so, as Movants filed that motion *after* Plaintiff's preliminary injunction motion had already been fully briefed and argued. But the District Court reserved judgment as to

whether Movants could intervene for later stages of the case. Movants then filed an "emergency" motion to "expedite" decision of the rest of their motion to intervene, which the District Court properly denied, since there was no "emergency." Movants then filed an improper interlocutory appeal of these two nonfinal orders regarding intervention. Separately, they moved to intervene directly in *this* appeal filed by Naples. And even though they are not parties, they simultaneously seek a stay.

"[M]otions to intervene on appeal are reserved for truly exceptional cases"— in part "to prevent litigants from using procedural gamesmanship" to skirt ordinary standards of review and requirements of finality, as Movants plainly attempt to do here. *Richardson v. Flores*, 979 F.3d 1102, 1104-06 (5th Cir. 2020). Movants do not come close to satisfying this "truly exceptional cases" standard—or even the ordinary standard for district-court intervention under Fed. R. Civ. P. 24(a). Again, they have no legal interest in this proceeding, and they have made no showing that Naples is defending its permit restrictions inadequately. Moreover, to the extent this Court reaches Movants' procedurally improper stay arguments, they verge on the frivolous. The Motion should be denied in full.

## BACKGROUND

This is a First Amendment dispute between Plaintiff and the City of Naples. Plaintiff sought a permit to stage a drag performance at the outdoor bandshell in Naples' Cambier Park, as it has done repeatedly in the past without incident. Naples

concedes that Plaintiff's performance will not be—and has never been—obscene, indecent, or otherwise unlawful.

A vocal contingent of Naples citizens opposed Plaintiff's permit, falsely claiming that drag performers are "groomers" and "pedophiles" who seek to harm children. They demanded that the City Council deny Plaintiff's permit—or at minimum, force Plaintiff's performance to be held indoors for an adults-only audience. After the City Council obliged, Plaintiff sued, seeking a preliminary injunction of these permit restrictions.

Below, a legal advocacy group called Liberty Counsel[1] sought to weigh in as *amicus curiae* in opposition to Plaintiff's preliminary injunction motion, which the District Court allowed. *See* ECF 32, 33, 38.[2] That *amicus* brief attached a declaration from Kimberly Collins—one of the present Movants—featuring pictures and video clips that allegedly depict past Pridefest drag performances. ECF 38-1.

---

[1] Liberty Counsel's attorney, Kristina Heuser, is directly involved with the underlying facts of this case, although she has never disclosed this, here or below. In 2022, she filed a police complaint against Plaintiff, alleging that its drag performance was "lewd." ECF 12-19 at 10. Naples Police reviewed her evidence and found that the performance broke no laws and that the "way the individuals were dressed was no more revealing than being in a bathing suit at a public pool or beach." *Id.* at 12-14. In 2023, Ms. Heuser submitted a written opposition to Plaintiff's permit application for that year's Pridefest. ECF 43-2. In response, the Naples City Manager emailed the Mayor and City Council stating that Ms. Heuser "is the same NY attorney who spoke at a council meeting making allegations that were *unfounded*." ECF 43-3 at 2 (emphasis added).

[2] "ECF" references are to the district court docket, No. 2:25-cv-291 (M.D. Fla.).

But Ms. Collins has never attended Pridefest. Instead, she "monitored publicly available social media" to seek out "materials [purportedly] from the event." *Id.* ¶4. Based on these random images, Ms. Collins conclusorily asserted that Plaintiff's performance will be "lewd." *Id.* ¶¶9, 11-12. The accompanying *amicus* brief made similar conclusory assertions of "lewdness" and "obscenity," without conducting any meaningful legal analysis. ECF 38 at 15-17, 19-20.

On April 30, counsel for Liberty Counsel sought Plaintiff's consent to participate in the oral argument of Plaintiff's preliminary injunction motion, but then changed course and withdrew that request on the eve of argument. On May 2, Plaintiff's motion was argued and submitted for decision, with Liberty Counsel's attorney in attendance. ECF 65 at 2.

Five days *after* oral argument, Liberty Counsel filed a motion to intervene on behalf of Ms. Collins and two other private Naples citizens. ECF 60. Movants did not request an expedited response to that motion. ECF 65 at 2. They stated that, once intervention was granted, they intended to file a brief in opposition to Plaintiff's already-submitted preliminary injunction motion and requested 14 days from the Court's decision on intervention in which to do so. ECF 60 at 1. As such, Movants effectively "demand[ed] one additional month of briefing, when Pridefest, the event central to this dispute, [was] less than a month away." ECF 65 at 2.

The District Court *sua sponte* denied intervention for purposes of the preliminary injunction stage. It found that Movants' demand to participate in that stage was untimely and would be "extremely prejudicial to the existing parties," as it "would possibly deprive them of a decision regarding their rights and obligations before Pride[f]est 2025" and "almost certainly deprive them of a chance to meaningfully appeal that decision." *Id.* at 2-3. However, the District Court deferred decision on intervention as to subsequent stages of the case. *See id.* at 3; ECF 87 at 4. That same day, the District Court granted Plaintiff's motion for a preliminary injunction in part. ECF 66. Naples thereafter filed an interlocutory appeal of that order. ECF 76; App. Doc. 1.

Meanwhile, Plaintiff opposed Movants' motion to intervene for the remaining phases of the case. ECF 73. More than two weeks after moving to intervene, Movants filed an "emergency" motion to "expedite" decision of the outstanding portion of their intervention motion, arguing that expedition was necessary so they could participate in Naples' interlocutory appeal of the preliminary injunction. ECF 80. Plaintiff opposed, explaining that Movants had not shown any "emergency." ECF 86 at 3-4. The District Court denied Movants' motion to "expedite," agreeing that there was no emergency and that an immediate "ruling on the remainder of the intervention motion would not alter [Movants'] inability to participate in the current appellate proceedings" filed by Naples. ECF 87 at 4.

Movants have now purported to appeal these non-final orders regarding intervention. *See* ECF 88; Case No. 25-11834 (11th Cir.), Dkt. No. 1. They have moved to consolidate their own separate appeal of those orders with this one. Case No. 25-11834 (11th Cir.), Dkt. No. 5. And, most relevant for present purposes, they have moved to intervene *directly* in this case.

## ARGUMENT

## I.   MOVANTS DO NOT MEET THE "EXCEPTIONAL CASE" STANDARD FOR APPELLATE INTERVENTION

"[T]he standards for district court intervention under Rule 24 and appellate intervention are different." *Cook Cnty. v. Texas*, 37 F.4th 1335, 1342 (7th Cir. 2022). There is a "steep threshold for allowing intervention on appeal." *Richardson*, 979 F.3d at 1105. In part, that is "because there is no rule" authorizing it. *Id.* And in part, that is because it is "unduly disruptive and places an unfair burden on the parties to the appeal.'" *Amalg. Transit Union Int'l AFL–CIO v. Donovan*, 771 F.2d 1551, 1553 (D.C. Cir. 1985). Thus, intervention at the appellate stage is "reserved for truly exceptional cases" and is permitted only "for imperative reasons." *Richardson*, 979 F.3d at 1104, 1104-06; *see also E. Bay Sanctuary Covenant v. Biden*, 102 F.4th 996, 1000-01 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 415 (2024); *Duplan v. Harper*, 188 F.3d 1195, 1203 (10th Cir. 1999).

In particular, "[a]ppellate intervention is not a means to escape the consequences of noncompliance with traditional rules of appellate jurisdiction and

procedure." *Hutchinson v. Pfeil*, 211 F.3d 515, 519 (10th Cir. 2000). Courts will not permit litigants to use appellate intervention to "circumvent the rule against ... interlocutory appeal," *id.*, or "to skirt [the] unfavorable standard[] of review" of a district court's denial of intervention, or to engage in other forms of "procedural gamesmanship," *Richardson*, 979 F.3d at 1105.

Movants' own brief highlights their gamesmanship. They have failed to develop any argument as to why they are entitled to intervention *on appeal*. Rather than make that required showing, Movants argue only that the district court abused its discretion in (partially) denying intervention *below*, incorporating their district-court motion to intervene by reference. Motion at 7-8. But again, this is a motion to intervene *on appeal*, with a different (and heighted) standard.[3]

Movants fall far short of that "exceptional cases and imperative reasons" standard. They are plainly attempting to intervene in *this* appeal to circumvent this Court's lack of jurisdiction to hear *their own* premature appeal. Appeals courts generally have jurisdiction to hear appeals only from "final decisions" of a district court. 28 U.S.C. § 1291. "A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the

---

[3] Movants' incorporation by reference of their district-court intervention motion—a ploy to give them more briefing space to argue for a stay—flouts the rules for appellate motions and their page limitations. *See* Fed. R. App. P. 27(d)(2); Loc. R. 27 (b)(2).

judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945).  But this litigation is still at the preliminary injunction phase; there is no final judgment.

Courts have recognized a narrow exception to the finality requirement for "an order [that] prevents a putative intervenor from becoming a party in *any* respect." *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 377-78 (1987) (emphasis in original).  But to fall within this exception, "an order denying a motion to intervene must be truly final with respect to the proposed intervenor—that is, the order must rule definitively on the party's participation in the litigation before the district court." *United States v. City of Milwaukee*, 144 F.3d 524, 528 (7th Cir. 1998); *see also United States v. US Stem Cell Clinic, LLC*, 987 F.3d 1021, 1024 (11th Cir. 2021).

Thus, an appeals court lacks jurisdiction over an order that merely denies intervention *in part*.  *See Stringfellow*, 480 U.S. at 375-78.  The same goes for an order that "d[oes] not make a 'final determination,' but instead defer[s]" the question of intervention "until 'a [later] stage in the litigation.'"  *US Stem Cell Clinic*, 987 F.3d at 1024.  "[P]ermitting the movant to appeal" such orders "would undermine the objectives of § 1291's 'firm finality principle': preventing piecemeal litigation and preserving the partitioned relationship between trial and appellate courts."  *Smith v. SEECO, Inc.*, 865 F.3d 1021, 1024 (8th Cir. 2017); *see also Stringfellow*, 480 U.S. at 380.

The orders below do not qualify for this narrow exception. They "did not resolve definitively whether [Movants] ought to be allowed to intervene in this litigation." *City of Milwaukee*, 144 F.3d at 529. The first order refused to allow intervention at the preliminary injunction stage, but otherwise reserved judgment. ECF 65 at 3. And the second merely refused to expedite a decision on the question the District Court had reserved. ECF 87. Those orders expressly "anticipate[] ... further consideration" of the intervention issue. *City of Milwaukee*, 144 F.3d at 531. "Therefore, there is no final decision for [this Court's] review." *Id.*; *see also US Stem Cell Clinic*, 987 F.3d at 1024 (observing that "an order [is] not final" where "the district court 'anticipate[s] further proceedings with respect to the issues raised'").

If the District Court subsequently denies the outstanding portion of Movants' motion to intervene, they can appeal then. And if the District Court instead grants intervention, and Appellants believe that their rights were violated by the refusal to permit intervention earlier, they can "raise [those] claims on postjudgment appeal." *Stringfellow*, 480 U.S. at 375-76, 378. What Movants cannot do is dictate the timing of intervention to enable them to piggyback on Naples' pending interlocutory appeal of the preliminary injunction. *See US Stem Cell Clinic*, 987 F.3d at 1024 (endorsing the district court's decision to "defer[] consideration" of intervention until "a more appropriate stage in the litigation," once "the defendants'

[pending] appeal was resolved"); *Stringfellow*, 480 U.S. at 378-79 (fact that would-be intervenor was "prevent[ed] ... from even *requesting*, much less obtaining, a preliminary injunction" did not justify immediate appeal of order that did not definitively deny intervention).

Therefore, Movants' separate appeal of the District Court's intervention orders must be dismissed for lack of jurisdiction. And Movants "cannot circumvent the requirements for taking an appeal in [their] own right by ... petition[ing] for intervention in another's appeal." *Hutchinson*, 211 F.3d at 519. That is precisely the type of "procedural gamesmanship" that justifies the courts' heightened bar for appellate intervention. In any event, for the reasons below, Movants' situation is by no stretch one of the "exceptional cases" justifying that relief.

## II. MOVANTS DO NOT MEET THE STANDARD FOR INTERVENTION IN THE DISTRICT COURT

Even if this Court were considering intervention under the standards of Federal Rule of Civil Procedure 24, Movants would need to satisfy all the requirements for intervention as of right. *See Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1102 (10th Cir. 2005) ("[A] party seeking intervention on appeal must satisfy the prerequisites of Rule 24(a).").[4] Movants do not come close to doing so. *See Athens Lumber Co. v. FEC*, 690 F.2d 1364, 1366 (11th Cir. 1982).

---

[4] "Permissive intervention" under Rule 24(b) is thus unavailable at the appellate level. *Cf. Davis v. Butts*, 290 F.3d 1297, 1299 (11th Cir. 2002) (district court's denial

### A. Movants Have No Legally Protectable Interest in This Proceeding

To intervene as of right, a movant must demonstrate "a direct, substantial, legally protectible interest in the proceeding." *Athens Lumber*, 690 F.2d at 1366. "In essence," the movant "must be at least a real party in interest in the transaction which is the subject of the proceeding." *Id.* The movant's claimed "interest" must be "particularized" to them, rather than a "general grievance." *Chiles v. Thornburgh*, 865 F.2d 1197, 1212-13 (11th Cir. 1989). That "interest" must also be "legally protectable"—in other words, "the interest [must] be one which the *substantive* law recognizes as belonging to or being owned by the applicant." *United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704, 711 (11th Cir. 1991).

As in the Article III standing context, an "ideological interest in the lawsuit" is not enough. *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 782-83 (6th Cir. 2007); *see also, e.g.*, *Brenner v. Scott*, 298 F.R.D. 689, 691 (N.D. Fla. 2014) (denying "pro-family" group's motion to intervene in lawsuit challenging Florida's same-sex-marriage ban). As the Supreme Court has warned, party status "is not to be placed in the hands of concerned bystanders, who will use it simply as a vehicle for the vindication of value interests." *Hollingsworth v. Perry*, 570 U.S. 693, 707 (2013).

---

of permissive intervention not appealable); *but see Worlds v. Dep't of Health & Rehab. Servs.*, 929 F.2d 591, 595 (11th Cir. 1991) (appealable, but only for "clear abuse of discretion").

Here, Movants seek intervention "to defend the permit restrictions" Naples has imposed on Plaintiff. ECF 60 at 2. But those restrictions have no legal effect on *them*. They do not legally compel Movants to do anything or legally prohibit them from doing anything. That is dispositive. *See S. Fla. Water*, 922 F.2d at 710-11 (farms lacked sufficient "interest" to intervene in federal government's environmental lawsuit against the utility that provided their water; even though outcome of suit could seriously impact the farms' "economic interests," they "asserted *no* property or other legal right in the Water District's services directly"); *Athens Lumber*, 690 F.2d at 1366 (union lacked sufficient "interest" to intervene in corporation's challenge to ban on corporate political expenditures, where union had no legal relationship to corporation and "no interest in the possibility of enforcement proceedings against the corporation").

Attempting to recast their ideological opposition to drag in a more concrete form, Movants argue that they will be "affected in a *practical* sense" if Plaintiff prevails, because they will supposedly be unable to take their children to a particular playground in Cambier Park while an outdoor drag performance occurs nearby. Motion at 10-11; ECF 60 at 11 (filed as an exhibit to the Motion). Movants claim an interest in "shielding their children from obscenity and public celebration of gender dysphoria, and in ensuring uninterrupted use of [that] playground for their children." Motion at 10. But this maneuver fails for multiple reasons.

***First***, Movants never state that they intend to take their children to that playground during the two-hour window on June 7 when Plaintiff's performance will occur. *See* ECF 60-1, 60-2, 60-3. Movants state that they have used the playground in the past and would like to do so again—but "[s]uch 'some day' intentions" are not enough "without any description of concrete plans, or indeed even any specification of *when* the some day will be." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (Article III standing context); *see also Meadowfield Apartments, Ltd. v. United States*, 261 F. App'x 195, 196 (11th Cir. 2008) (mere "suggestion" that movant's "future" interests "may be impaired" is "too speculative to support intervention").

***Second***, even if it were factually supported, Movants' claim that they would be "affected in a *practical* sense" by the outcome of this lawsuit is insufficient. Intervenors must have not just a "practical" interest in the lawsuit's outcome, but a "legally protectable" one—*i.e.*, "one which the substantive law recognizes as belonging to or being owned by [them]." *S. Fla. Water*, 922 F.2d at 710 (observing that an "economic interest[]" in the outcome of a lawsuit is insufficient, and that the lawsuit must "threaten some substantive legal [right]" possessed by the would-be intervenor); *see also Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005).

Assuming Plaintiff prevails, and its drag performance takes place outdoors, nothing *legally* prevents Movants from using the Cambier Park playground during the performance (or at any other time). Movants may *voluntarily* choose to stay away—or use the playground slightly earlier or later—to avoid witnessing speech they dislike. But, as the Supreme Court has held in the Article III context, taking voluntary action to avoid a particular consequence qualifies as an "injury-in-fact" only if the consequence sought to be avoided would *itself* qualify as "injury-in-fact." *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013).

The relevant question, therefore, is whether Movants have a "legally protectable interest" in not encountering speech or expression they find offensive. They do not. As this Court has stressed, "[t]he First Amendment protects the right to speak; it does *not* give [Movants] the right to stop others with opposing viewpoints from speaking." *Women's Emergency Network v. Bush*, 323 F.3d 937, 947 (11th Cir. 2003). And "the burden normally falls upon the viewer to avoid further bombardment of his sensibilities simply by averting his eyes." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 210-12 (1975) (cleaned up).

***Third***, even if Movants intend to take their children to that playground during the two-hour time frame at issue, and even if they had some "legally protectable" interest in using that playground without encountering speech they dislike, that claimed interest is not a "substantial" one supporting intervention. *Athens Lumber*,

14

690 F.2d at 1366.  Again, Movants could use that playground without seeing a drag performance on any day of the year except June 7—or at any time on June 7 outside that two-hour window.  Movants have not claimed that it would burden them in any way to use the playground slightly earlier or later that day; nor would such a claim be credible.  Movants' claimed "interest" is *de minimis* at best—an obvious stalking horse for their ideological opposition to drag, which is insufficient.

## B.     Movants Have Failed To Show Inadequate Representation

Even if Movants had shown a "legally protectable interest," Rule 24(a) also requires them to "demonstrate that [their] interest is represented inadequately by the existing parties to the suit."  *Athens Lumber*, 690 F.2d at 1366.

Courts generally "find that [the existing parties'] representation is adequate" absent collusion or an actual conflict of interest.  *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 215 (11th Cir. 1993).  Otherwise, courts "presume[] that a proposed intervenor's interest is adequately represented when an existing party pursues the same ultimate objective as the party seeking intervention." *Burke v. Ocwen Fin. Corp.*, 833 F. App'x 288, 293 (11th Cir. 2020) (quoting *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 215 (11th Cir. 1993)); *see also, e.g.*, *Athens Lumber*, 690 F.2d at 1366 (denying intervention where the proposed intervenor and the defendant agency had "the same objective," *i.e.*, "uphold[ing] the constitutionality" of the challenged statute).

And this presumption is even stronger "[w]hen the existing party is a government entity." *United States v. Georgia*, 2022 WL 61156, at *2 2 (N.D. Ga. Jan. 6, 2022). After all, "it is the government's basic duty to represent the public interest," *Stuart v. Huff*, 706 F.3d 345, 351 (4th Cir. 2013), and courts "presume that [a] government entity adequately represents the public," *Burke*, 833 F. App'x at 293. Thus, in a case like this one, courts "require the party seeking to intervene to make a *strong* showing of inadequate representation." *Id.* (emphasis added).

Here, there is no dispute that Naples and Movants share the same "ultimate objective": defending the challenged permit restrictions. And Naples is legally charged with representing the interest of Naples' citizenry, including Movants. Therefore, absent "strong" evidence to the contrary, it is presumed that Naples adequately represents Movants' interests. And Movants have not come close to adducing such evidence.

Movants assert that they would have emphasized different legal arguments in opposition to Plaintiff's preliminary injunction motion. ECF 60 at 13-14. But the "settled rule is that disagreement over how to approach the conduct of the litigation is not enough to rebut the presumption of adequacy." *Stuart*, 706 F.3d at 353-54 (refusing to "infer[] adversity" merely because "the Attorney General made certain strategic decisions with which appellants disagree," such as emphasizing particular "legal arguments" and declining to take an interlocutory appeal); *see also Daker v.*

*Owens*, 806 F. App'x 881, 883 (11th Cir. 2020) ("different litigation strategies" insufficient).

Moreover, "to the extent [Movants] do have a slightly different perspective from the [City]," their participation below as *amici curiae* "allow[ed] them to present their perspective and adequately address[ed] their concerns." *Ark Encounter, LLC v. Stewart*, 311 F.R.D. 414, 426 (E.D. Ky. 2015) (denying motion to intervene); *see also Stuart*, 706 F.3d at 355 ("The availability of [*amicus* participation] reinforces our disinclination to drive district courts into multi-cornered lawsuits by indiscriminately granting would-be intervenors party status and all the privileges pertaining thereto.").

## III.   MOVANTS' STAY ARGUMENTS ARE MERITLESS

For the reasons above, Movants' arguments for a stay are not properly before this Court. *See Marino v. Ortiz*, 484 U.S. 301, 304 (1988) ("The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled."). Nevertheless, those arguments lack merit.

Movants argue that Plaintiff's drag performance has limited or no First Amendment protection because it lacks a "discernable message." Motion at 14. The District Court properly rejected this argument. As the Supreme Court has held, "live entertainment, such as musical and dramatic works[,] fall[s] within the First Amendment guarantee." *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 65 (1981).

The requirement of a "discernable message" applies only to *expressive conduct*, not to *speech* like a stage performance. *See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 569 (1995).

This Court recently found Florida's law targeting drag performances to be a violation of the First Amendment, holding that such performances are "protected speech." *HM Fla.-ORL, LLC v. Governor*, No. 23-12160, 2025 WL 1375363, at *21-22 (11th Cir. May 13, 2025). Numerous courts agree that drag is "an art form, a source of entertainment, and a form of activism" that "conveys a valuable political message," and is therefore "indisputably protected speech." *S. Utah Drag Stars v. City of St. George*, 677 F. Supp. 3d 1252, 1286 (D. Utah 2023).[5]

Plaintiff introduced undisputed evidence below that its drag performance expresses political and social messages about gender roles in contemporary society. *See, e.g.*, ECF 12-5 ¶¶4-6,16-17; ECF 12-10; *see also* Note, *Drag Queens, The First Amendment, and Expressive Harms*, 137 Harv. L. Rev. 1469, 1470-74 (2024). Naples conceded below that Plaintiff's performance is entitled to full First Amendment protection. *See* ECF 66 at 22; ECF 52 at 37:11-38:12. And even Movants' own arguments appear to recognize that drag performance conveys a

---

[5] *See also Woodlands Pride, Inc. v. Paxton*, 694 F. Supp. 3d 820 (S.D. Tex. 2023); *Imperial Sovereign Ct. of Mont. v. Knudsen*, 684 F. Supp. 3d 1095 (D. Mont. 2023); *Texas A&M Queer Empowerment Council v. Mahomes*, 2025 WL 895836, at *6 (S.D. Tex. Mar. 24, 2025).

message by, in their view, "mock[ing] ... traditional feminine dress and behaviors." Motion at 14. Of course, on that view, such performance is social commentary at the heart of the First Amendment's free-speech guarantee.

Movants also argue that Naples' permit restrictions are content-neutral "time place and manner" restrictions because they "curtail[] the negative secondary effects of having children ... exposed to [drag performances]." Motion at 16, 19. But Naples has conceded that its restrictions are in fact content-based. *See* App. Doc. 5 at 19-21. Regardless, the Supreme Court has rejected Movants' contention. When the "overriding justification for the regulation is concern for the effect of the subject matter on young viewers," it "is the essence of content-based regulation." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 811-12 (2000). The so-called "secondary effects" doctrine does not apply to "[r]egulations that focus on the direct impact of speech on its audience." *Boos v. Barry*, 485 U.S. 312, 321 (1988); *cf.* Motion at 16-17.

Finally, Movants claim that Naples has "a compelling interest in protecting children from being exposed to obscene and lewd conduct." Motion at 20. But Naples itself denies that it imposed its restrictions for this reason. ECF 77 at 8-12. It certainly made no finding in connection with the permit process that Plaintiffs' performance would be obscene or lewd. And the "justifications" used to uphold "interfer[ence] with First Amendment rights" must be the government's *actual*

contemporaneous justifications—not rationales "hypothesized or invented *post hoc*." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 543 n.8 (2022). Indeed, the only record evidence on this score is the conclusion of Naples' Police Department that Plaintiff's performance was *not* "lewd" and violated no laws. ECF 43 at 2-3; ECF 12-19 at 10, 12, 14.

The handful of cherry-picked images and video clips Movants' counsel submitted below do not show otherwise. Those materials are not verified and were admittedly pulled off the Internet by someone who never attended Pridefest. ECF 38-1 ¶4. In any event, the images and clips, which feature fully clothed performers doing choreographed dances, come nowhere close to "lewdness," let alone "obscenity"—especially given drag's value as political activism and social commentary. *See Miller v. California*, 413 U.S. 15, 24 (1973). There is nothing "erotic" about these images and videos, at least to a normal observer. *See Erznoznik*, 422 U.S. at 213 n.10 ("[U]nder any test of obscenity as to minors not [even] all nudity would be proscribed. Rather, to be obscene 'such expression must be, in some significant way, erotic.'"). As this Court recently stressed, "as with adults, only '*sexual* material' can be obscene for minors." *HM Florida-ORL*, 2025 WL 1375363, at *15-16. Furthermore, to judge its "obscenity," the Court would need to adjudicate the two-hour performance "taken as a whole"—not a handful of cherry-

picked images. *United States v. Little*, 365 F. App'x 159, 164 (11th Cir. 2010) (quoting *Miller*, 413 U.S. at 24).

Movants plainly think that minors should not be exposed to drag's message that traditional gender roles are an appropriate subject of critique and satire. They have every right to hold that view. But "[s]peech that is neither obscene as to youths nor subject to some other legitimate proscription cannot be suppressed solely to protect the young from ideas or images that a legislative body [or a would-be intervenor] thinks unsuitable for them." *Erznoznik*, 422 U.S. at 213-14. As noted above, any parent who does not want their child to see Plaintiff's performance can simply not take them. *See id.* at 210-14 (striking down city ordinance prohibiting drive-in theaters from showing films featuring actual nudity, as the ordinance "s[ought] only to keep these films from being seen from public streets and places where the offended viewer readily can avert his eyes").

## CONCLUSION

For the reasons above, the Motion should be denied.

Dated: June 4, 2025

Respectfully submitted,

*/s/ Daniel B. Tilley*
Daniel B. Tilley (FBN 102882)          Jonah M. Knobler
Samantha J. Past (FBN 1054519)         Thomas P. Kurland
ACLU FOUNDATION OF FLORIDA             Justin S. Zaremby

4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2714
spast@aclufl.org
dtilley@aclufl.org

Joshua M. Goldman
Maxwell Weiss
Anthony Wong
PATTERSON BELKNAP WEBB &
   TYLER LLP
1133 Ave. of the Americas
New York, NY 10036
Tel: 212-336-2000
jknobler@pbwt.com
tkurland@pbwt.com
jszaremby@pbwt.com
jgoldman@pbwt.com
maweiss@pbwt.com
awong@pbwt.com

*Counsel for Naples Pride*

## CERTIFICATE OF COMPLIANCE

This motion contains 4,974 words, excluding the parts of the document exempted by Rule 32(f).

This motion complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6).

## CERTIFICATE OF SERVICE

This document was filed today using the appellate CM/ECF system, which serves all participants in this case who have registered with that system.

*/s/ Daniel B. Tilley*
Daniel B. Tilley